UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-625-RJC-DCK

| ANTOINE FORD, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| FOOD LION, LLC, | ) | |
| Defendant. | ) | |

## I.  BACKGROUND

On December 8, 2011, Mr. Antoine Ford ("Ford") filed a complaint against Food Lion. (Doc. No. 1). He alleged that Food Lion discriminated against him based on his sex, and, after he reported the discrimination, retaliated against him by terminating his employment. (Id.). Mr. Ross Sohm ("Sohm"), who has since withdrawn as counsel for Ford, began settlement negotiations in mid-October of 2012 with counsel for Food Lion, Ms. Melissa Romanzo ("Romanzo") and Mr. Robert Quackenboss ("Quackenboss"). (Doc. Nos. 24-2 at ¶ 2; 24-1 at ¶ 2). Several iterations of offers and counteroffers ensued. Food Lion alleges that although an agreement was eventually reached, Ford no longer wishes to pursue the settlement. (Doc. No. 24 at 6). As a result, Food Lion brought this Motion to Enforce Settlement. (Doc. No. 23). Ford urges the Court to deny the Motion, arguing that Sohm never entered into such an agreement, and even if he did, Ford would not be bound because Sohm lacked the necessary authority to enter into an agreement on his behalf. (Doc. 29 at 1-3).

## II.   STANDARD OF REVIEW

"District courts have inherent authority . . . to enforce settlement agreements." Hensley v. Alcon Laboratories, Inc., 277 F.3d 535, 540 (4th Cir. 2002). In order to do so, the Court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." Id. at 540-541. "If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the [Court] may not enforce [the] settlement agreement summarily." Id. at 541 (emphasis in original). Instead, a plenary evidentiary hearing must be held in order to resolve the dispute. Id. (citing Millner v. Norfolk & W.R. Co., 643 F.2d 1005, 1009 (4th Cir. 1981)). In this case, the evidence in the record is sufficient to determine as a matter of law whether an agreement was reached and whether that agreement should be enforced. An evidentiary hearing on the matter is, therefore, unnecessary.

## III.   ANALYSIS

Federal common law governs enforcement of a settlement agreement brought before the Court as part of ongoing litigation involving a federal statutory scheme. Gamewell Mfg., Inc. v. HVAC Supply, Inc., 715 F.2d 112, 115 (4th Cir. 1983) ("[T]he standards by which [litigation in progress] may be settled, and hence resolved short of adjudication on the merits, are preeminently a matter for resolution by federal common law principles, independently derived."). The underlying claim brought by Ford is a Title VII action which places the Motion squarely within this rule. See (Doc. No. 1).

A settlement agreement is considered a contract, see United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975), and the Court will look to the objectively manifested intentions of the parties to determine whether such an agreement was reached, Moore v. Beaufort

Cnty., N.C., 936 F.2d 159, 162 (4th Cir. 1991) (citing Piver v. Pender Cnty. Bd. of Edu., 835 F.2d 1076, 1083 (4th Cir. 1987) cert. denied, 487 U.S. 1206 (1988)).  Because the Court's power to enforce is limited to complete agreements it must find that there was a meeting of the minds as to all material terms; it cannot play the role of final arbiter.  Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983).

    A.    An Attorney's Authority to Settle

Sohm represented Ford throughout negotiations with Food Lion, and the record shows that all related correspondence flowed through him.  Therefore, to find a binding agreement between Ford and Food Lion, the Court must first determine that Sohm was cloaked with proper authority to consummate such an agreement.

The Court recognizes that an attorney's authority to negotiate on behalf of his client "is far different from the authority to agree to a specific settlement."  Auvil v. Grafton Homes, Inc., 92 F.3d 226, 231 (4th Cir. 1996).  "It is generally accepted that when a client retains an attorney to represent him in litigation, absent an express agreement to the contrary, the attorney has implied authority to conduct the litigation and to negotiate its resolution."  Id. at 229-230 (emphasis in original); Hensley, 277 F.3d at 541 n.* (citing Auvil for same).  "But the substantive decisions of whether to bring suit, to dismiss suit, or to settle are not by implication ones that the attorney is authorized to make."  Id. (internal citations and quotations omitted); contra Moore, 936 F.2d at 163-64 (relying on a 5th Circuit decision stating that "[t]he general rule is that counsel of record have the authority to settle litigation on behalf of their client"); Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d 291, 298 (4th Cir. 2000) (citing Moore for same).

3

Sohm's authority to speak and act for his client is ultimately governed by agency principles.[1] Restatement (Third) of the Law Governing Lawyers Ch. 2, Introductory Note; <u>Veal v. Geraci</u>, 23 F.3d 722, 725 (2d Cir. 1994). In order to go beyond negotiations and bind his client to a specific settlement he must hold actual authority or apparent authority. Actual authority can be expressly granted or implied from the words and conduct of the parties in light of the circumstances. Restatement (Third) of Agency § 3.01. Under the theory of actual authority, even if Ford had other intentions, Sohm's conduct would be authorized if he reasonably drew the inference that Ford intended him to enter into a final agreement. <u>Id.</u>[2]

B.  <u>Actual Authority to Settle</u>

The correspondence between the parties throughout the negotiation process reveals Sohm's actual authority to settle. On October 12, Sohm began negotiations with Romanzo by demanding $50,000.00 to settle the case. (Doc. Nos. 24-2 at ¶ 2; 24-1 at ¶ 2). On October 17, by email and first class mail, Romanzo informed Sohm that "Food Lion must reject [the] offer of $50,000.00." (Doc. No. 24-1 at 6). Nevertheless, she relayed that Food Lion was willing to "settle th[e] case for $5,000 and a general release of all claims." (<u>Id.</u>). A week later, Sohm emailed Romanzo and co-counsel Quackenboss, saying that Ford was "quite adamant in

---

[1] The Court generally looks to the Restatement of Agency to determine the general common law rules. <u>Cilecek v. Inova Health System Services</u>, 115 F.3d 256, 260 (4th Cir. 1997) (citing <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 752 (1989)).

[2] The law of North Carolina relied upon by Food Lion and Sohm in his discussions with Ford is not to the contrary. "Special authorization from the client is required before an attorney may enter into an agreement discharging or terminating a cause of action on the client's behalf." <u>Harris v. Ray Johnson Const. Co., Inc.</u>, 534 S.E.2d 653, 655 (N.C. Ct. App. 2000). "North Carolina law has [also] long recognized that an attorney-client relationship is based upon principles of agency." <u>Dunkley v. Shoemate</u>, 515 S.E.2d 442, 444 (N.C. 1999). Accordingly, an attorney's "[a]ctual authority is that authority which [he] reasonably thinks he possesses, conferred either intentionally or by want of ordinary care by the principal." <u>Harris</u>, 139 N.C. App. at 830. It "may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question." <u>Id.</u>

4

continuing with litigation," but he "has authorized me to accept the minimum sum of $25,000.00 to settle this matter." (Id. at 8). Quackenboss rejected the offer and responded with a counteroffer of $7,500.00 during a telephone call on November 5. (Doc. No. 24-2 at ¶ 5). Sohm again emailed both attorneys for Food Lion saying, "I have spoken to Mr. Ford concerning . . . the last offer of $7,500.00 . . . [and] he has authorized me to reduce his last offer to $24,000.00." (Doc. No. 24-1 at 10). Romanzo rejected the offer and conveyed Food Lion's next counteroffer of $12,500.00 in a telephone call on November 29. (Doc. No. 24-2 at ¶ 7). When Sohm informed Ford of the counteroffer and sought "approval to make a final offer of $20,000," Ford replied "[t]hank [y]ou Mr[.] Sohm but I don't feel that 12,500.00 is adequate compensation[,] nor is 20,000.00." (Doc. No. 29-1 at 3: 12/4/12 Email from Sohm; 12/5/12 Email from Ford). Sohm accordingly declined "Food Lion's [counter]offer of $12,500.00" and indicated that the "prior offer of $24,000.00 w[ould] remain open until . . . December 10th." (Doc. No. 24-1 at 13).

On December 7, Romanzo spoke with Sohm via telephone and raised Food Lion's counteroffer to $20,000.00. (Doc. Nos. 24-1 at ¶ 8; 24-2 at ¶ 9). In a subsequent telephone call that day, Sohm informed Romanzo that Ford rejected Food Lion's counteroffer of $20,000.00 and maintained his offer to settle for $24,000.00. (Doc. Nos. 24-1 at ¶ 9; 24-2 at ¶ 10). Romanzo telephoned Sohm again that day and accepted Ford's offer to settle for $24,000.00. (Doc. Nos. 24-1 at ¶ 10; 24-2 at ¶ 11). Sohm immediately emailed Ford informing him that "[a] few minutes after you left[,] counsel for Food Lion called to confirm they are accepting the offer of $24,000.00 to settle." (Doc. No. 29-2 at 5: Email from Sohm); see also (Doc. No. 29 at 1) (Ford acknowledging going to Sohm's office that day). Ford's response confirms that he had previously agreed to an amount of $24,000.00 and that the amount remained acceptable. He stated, "24000[] is in no way equivocal to what I am going through. I am only accepting this

5

because we previously agreed upon this number, because I respect your input[], and I yield to you[r] experience." (Id. at 4: Email from Ford) (emphasis added). At bottom, Sohm could reasonably infer from the circumstances that a benchmark was set at $24,000.00 and that Ford intended for him to settle on his behalf for that amount. Sohm, therefore, held actual authority, and an agreement entered into on Ford's behalf binds him. Both attorneys stipulate in their affidavits that an agreement was in fact reached, (Doc. Nos. 24-2 at ¶ 17; 24-1 at ¶ 16), and the record supports this conclusion.

      C.     <u>Terms and Conditions</u>

In addition to finding a complete agreement, the Court "must [also] be able to determine its terms and conditions." <u>Hensley</u>, 277 F.2d at 541. A few days after Food Lion accepted Ford's offer, Sohm received a written draft settlement agreement for his review. He sent it back with only "a few additions and a few minor changes," implying that the material terms were established. (Doc. No. 24-1 at 30: Email from Sohm); <u>see also</u> (Doc. No. 24-1, Exs. G & H). Those terms are discernible from the revised settlement agreement. (Doc. Nos. 24-1 at 40-46; 24-2 at 18-23). Ford stood to receive $8,415.00 for lost wages, $8,415.00 for compensatory damages, and $7,170 allocated for attorneys' fees. (Doc. No. 24-2 at 18). In exchange for this consideration, Ford would waive and release all claims against Food Lion, both related to this litigation and in any other potential litigation. (<u>Id.</u> at 19). Thus, the terms and conditions are clearly set forth in the exhibits before the Court. The fact that the agreement was not ultimately signed does not bar enforcement. <u>Alexander v. Industries of the Blind, Inc.</u>, 901 F.2d 40, 41 (4th Cir. 1990).

D. <u>Change of Heart</u>

Ford apparently had a change of heart once the agreement was reached for an amount of $24,000.00. Once Food Lion accepted the offer on December 7, his attention shifted to whether the "terms of the settlement agreement . . . would prevent [him] from seeking any recourse [in] the second instance" of sexual harassment and "other instances of negligence committed by Food Lion." (Doc. No. 29-2 at 4). On December 15, he emailed Sohm saying that his legal research revealed a new theory of recovery, and "[i]n light of the new information about my complaint . . . I cannot knowing[ly] settle this case for 24000." (Doc. No. 29-3 at 2). He further stated, "[s]orry for any inconvenience. 24k is not enough."[3] (<u>Id.</u>). However, despite Ford's apparent change of heart, a complete agreement was already reached and "having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." <u>Young v. FDIC</u>, 103 F.3d 1180, 1195 (4th Cir. 1997). Where "an agreement for complete settlement of the underlying litigation . . . has been reached and its terms and conditions can be determined, the [C]ourt may enforce the agreement summarily." <u>Millner</u>, 643 F.2d at 1009.

---

[3] At this point Sohm withdrew as Ford's counsel. (Doc. No. 29-4 at 4-5: 12/17/12 email from Sohm) ("As discussed on the phone with you today, you have indicated that you no longer wish to pursue the settlement agreement that was agreed to by Food Lion, and I have advised against doing that. . . . [I]f you are still adamant in not going forward with the settlement, I request . . . consent to withdraw from representation.").

## IV. CONCLUSION

The Court finds that the parties reached a complete agreement, and the terms of that agreement are clearly discernible from the record.

**IT IS, THEREFORE, ORDERED** that Food Lion's Motion to Enforce Settlement, (Doc. No. 23), is **GRANTED**.

Signed: March 29, 2013

Robert J. Conrad, Jr.
Chief United States District Judge